Mead v. Husted.

---

### ALEXANDER MEAD vs. DAVID S. HUSTED.

In a civil action for the burning at different times of several barns of the plaintiff, the right of action as to certain of which was outlawed, held that evidence was admissible of a threat of the defendant to burn " that barn " of the plaintiff, although no barn was specified.

Evidence of any declaration of the defendant showing malice towards the plaintiff would be admissible.

Such evidence is not irrelevant because the declarations are equivocal or inexplicit.

Nor because they were made a considerable time before the act charged.

And held that evidence was admissible that the defendant was seen in the neighborhood of one of the barns while it was burning, although that barn was one as to which the right of action was outlawed.

The proving of the defendant's presence at that time was one step in the proof of his having set the barn on fire.

And proof that he set that barn on fire would have gone to show that he set the others on fire.

A party has a right to take one step at a time in his proof, without disclosing in advance the next.

The denial of the proof of any fact that is relevant is presumably injurious, in the absence of any finding to the contrary.

TRESPASS and trespass on the case, for the burning at different times of several barns of the plaintiff; brought to the Superior Court in Fairfield County and tried to the jury before *Sanford, J.* Verdict for the defendant and motion for a new trial by the plaintiff for errors in the ruling of the court. The case is sufficiently stated in the opinion.

*G. H. Watrous* and *H. S. Sanford*, in support of the motion.

*J. B. Curtis*, with whom was *M. L. Mason* and *F. A. Hubbard*, contra.

LOOMIS, J. The declaration, consisting of six counts, some in trespass and some in case, charges the defendant with burning certain barns of the plaintiff on the 22d day of October, 1875, the 22d day of March, 1876, the 22d day of March, 1877, and the 19th day of January, 1879, and

claims damages therefor. The suit was commenced May 8th, 1879.

As to the first and fourth counts the defendant, assuming the counts to be in trespass, pleaded the statute of limitations. The plaintiff admitted that the plea was well taken as to the first count, but demurred to the plea as to the fourth count. The court however overruled the demurrer on the ground that the fourth count was also in trespass, and the trial proceeded under the general issue as to the other counts.

Upon the argument in this court it was conceded that the plaintiff's motion for a new trial was not competent to bring up for review the decision of the court below relative to the fourth count. Only two questions therefore are presented for our present consideration:

1. Was the testimony of Ella Williams admissible, that she saw the defendant in the neighborhood of the barn consumed on the 22d of October, 1875, and while it was on fire?

2. Could the defendant, on cross-examination, be asked whether he had ever had any conversation with one James Green about burning a barn, and whether he made any threats that he would burn "that barn," unless some one of the barns mentioned in the second, third, fifth or sixth counts should be specified?

As these two questions depend essentially upon the same rule of evidence, a separate discussion will be unnecessary.

Both questions had the same object, namely, to show the defendant's ill will or malice towards the plaintiff and to point him out as the guilty agent of the plaintiff's loss by showing that he harbored in his mind an impelling motive to commit the deed. The first offer was designed to prove the ill will by showing its fruits as consummated in the act of setting a barn of the plaintiff on fire; the last by a threat indicating a mental preparation and purpose to do such an act. We think the court erred in ruling out this evidence.

The fact, which seems to have had weight with the court,

that the act in the one case and the threat in the other did
not refer specifically to any of the counts in the declaration
then on trial, did not render the evidence inadmissible. An
act or a threat referring to any barn of the plaintiff would
equally evince the same malicious purpose toward the same
individual and in the same criminal direction. Indeed, if
the threat had been much more general and indefinite—as
for instance, to injure the plaintiff or destroy his property,
and no barn at all had been mentioned, it would still have
been admissible. It is a mistake to suppose that evidence
of this character is irrelevant merely because it is equivocal
or inexplicit.

In *State* v. *Hoyt*, 47 Conn., 538, this court sanctioned the
admission of obscure verbal intimations and threats couched
in the most ambiguous language, as tending to show an
existing disposition or design. In Best on Presumptions,
§ 233, it is held that on the trial of a man for the murder
of his wife, the previous declaration of the accused that
"my wife is a queer body; I should not be surprised if she
were to take herself off some fine morning," would be
admissible, though the language itself would seem to refer
to the mere disappearance of the wife by her own act, rather
than to murder by his act.

The objection also that the act and the threat in question
were indefinite or too remote in point of time is equally un-
tenable. In *State* v. *Hoyt*, 46 Conn., 336, the admission of
threats one, three, four, and even thirteen years prior to the
murder in question, were sanctioned by this court. PARDEE,
J., giving the opinion, said:—"The objection does not
properly go to the admission, but to the weight of the
testimony. No rule of limitation runs against evidence as
to malice in such cases."

One other objection specially applicable to the testimony
of Ella Williams remains to be considered. It is said that
malice could only be inferred from the act completed, and
not from the isolated circumstance that the defendant was
seen in the neighborhood of the burning barn, which fact
standing alone would not prove the act relied upon. This

is true as a legal proposition; and if it had been conceded that no other testimony was to be offered we do not think the plaintiff would be entitled to a new trial on that account alone. But the fact was relevant and admissible, and presumably it was the beginning of a chain of facts tending to connect the defendant with the offence. If the plaintiff had been allowed to show the defendant's presence at the fire, naturally his appearance, his conduct, his language would also have been disclosed, which might have gone far to show whether he was there as a sympathising, helpful and honest neighbor, or there as a conscious criminal using the fact of his presence to divert suspicion.

There are instances where the admissibility of a fact to be proved depends on a foundation first to be laid; this however is not such a case. The plaintiff had a right to take one step at a time in his proof without disclosing in advance the next, and the denial of only one fact, being relevant, was presumably injurious, in the absence of any finding to the contrary.

A new trial is advised.

In this opinion the other judges concurred.